# DAVID K. BERTAN
**ATTORNEY AT LAW**
**888 GRAND CONCOURSE, SUITE 1N**
**BRONX, NEW YORK 10451**

**(718) 742-1688**
**FAX (718) 585-8640**
**E-MAIL: DBERTAN@YAHOO.COM**

May 16, 2014

<u>Via ECF</u>

Hon. Denise L. Cote, United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re: U.S. v. Gregory Gooden
       14-Cr-61 (DLC)

Dear Judge Cote:

  I represent Mr. Gregory Gooden in the above matter.  On April 12, 2011, Mr. Gooden pleaded guilty before the Hon. George B. Daniels to an eight count information charging him with the crimes of Conspiracy to Possess and Distribute Narcotics (21 USC §846), Conspiracy to Commit Robbery (18 USC § 1951), three counts of Hobbes Act Robbery (18 USC § 1951), one count of brandishing a firearm during a narcotics crime (18 USC §924 (c)(1)(A)(ii)), one count of brandishing a firearm during a crime of violence (18 USC §924 (c)(1)(A)(ii)), and Extortion (18 USC § 1951). Sentencing is set for Friday, May 23, 2014 at 2 PM.  I am writing this letter, pursuant to Fed. R. Crim. Proc. 32, advising this Court of several factors to consider at the time of sentencing.  By this letter I am also joining the Government's application for this Court to sentence Mr. Gooden in light of the factors set forth in § 5K1.1 (a) (1) – (5) of the Sentencing Guidelines.

  Mr. Gooden's cooperation constitutes an exceptional acceptance of responsibility, thus warranting a sentence that is outside the sentencing guidelines.  This letter is intended to assist the Court in fashioning a sentence that is consistent with the statutory directives of both the advisory sentencing guidelines, and 18 USC 3553 (a), and that takes into account Mr. Gooden's extraordinary cooperation.

  Because of Mr. Gooden's extensive cooperation, as detailed in this letter and the Government's submission, I am also requesting that this letter be filed under seal, with a

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 2

redacted copy to be filed via ECF.  Although Mr. Gooden has already testified in open court, the release of this letter could endanger Mr. Gooden ███████████ .

## The Offense Guideline and Statutory Sentencing Range

## Custodial Sentences

## Statutory Provisions

Under Count 1, the mandatory minimum sentence is 20 years, and the maximum term is life imprisonment[1].

Under Counts 2-5, the maximum term of imprisonment is 20 years: there is no mandatory minimum term of imprisonment.  18 USC §1951.

Under Count 6, the mandatory minimum term of imprisonment is 7 years, and the maximum term is life imprisonment. 18 USC § 924 (c) (1) (A) (ii).

Under Count 7, the mandatory minimum term of imprisonment is 25 years, and the maximum term is life imprisonment.  18 USC § 924 (c) (1) (A) (ii).  In addition, the sentences under Counts 6 and 7 must be served consecutively to each other, and to any other sentences imposed in this case.

Under Count 8, the maximum term of imprisonment is 20 years; there is no mandatory minimum term of imprisonment.  18 USC § 1951.

In light of the foregoing, the mandatory minimum sentence under the statutory provisions is 52 years, and the maximum term is life imprisonment.

## The Guidelines Sentence

The Guidelines calculation in this case comprises a series of calculations, which include a guidelines analysis of the separate counts, and a grouping analysis of counts 1-5 and count 8. Because counts 6 and 7 carry mandatory consecutive terms of imprisonment, no calculations apply to those counts.

Starting with Count 1, the base offense level is first calculated by assessing marijuana equivalencies to the narcotics charged in the information.  According to the drug equivalency table in the comments to 2D1.1, the 5.5 kilograms of cocaine are the equivalent of 1,00 kilograms of marijuana, while the 10.5 kilograms of crack cocaine are the equivalent of 37,495.5 kilograms of marijuana, for a total of 38,595.5 kilograms of marijuana.  Under 2D1.1 (c)(1), the base offense level for that amount of marijuana is 38.  There are no other adjustments to that level.

---

[1] At the time of his plea, Mr. Gooden acknowledged his prior narcotics felony conviction.  21 USC 841 (b)(1)(A).

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 3

Counts 2-5 are considered in three separate groups, comprising of Counts 2 and 3, Counts 2 and 4, and Counts 2 and 5. Counts 2 and 3 start with a base offense level of 20 (2B3.1). Because the victim sustained serious bodily injury, a 4 level increase is assessed pursuant to 2B3.1 (b)(32)(B). In addition, because the intention was to steal narcotics, a one level increase is assessed pursuant to 2B3.1 (b)(6). There are no other adjustments (there is no adjustment for use of a firearm as that issue is covered by Mr. Gooden's conviction under Count 6: 2K2.4 note 4). Thus, the final offense level for those two counts is 25.

The same analysis holds true for determining the guidelines level for Counts 2 and 4. The final offense level for those two counts is also 25.

Counts 2 and 5 have a slightly different guidelines analysis: that analysis starts at level 20, pursuant to 2B3.1. A 2 level increase is imposed because a victim was restrained (2B3.2(b)(4)(B), a 1 level increase is assessed because the intended proceeds were narcotics (2B3.1(b)(6), and another 1 level increase is appropriate because the loss amount was approximately $35,000 (2B3.1 (b)(7)(B). Thus, the final offense level for Counts 2 and 5 is 24.

As noted above, Counts 6 and 7 are not included in the grouping analysis because they have mandatory consecutive terms.

Count 8 comprises the fifth and final group. Under 2B3.2, extortion has a base offense level of 18. A two-level increase is warranted because of the threat of bodily injury (2B3.2 (b)(4)(A), and an additional two levels are added due to the loss amount of approximately $60,000 (2B3.2(b)(2) and 2B3.1(b)(7)(C). The final offense level for Count 8 is 22.

The next part of the grouping analysis would ordinarily assess the number of units that will affect the final guidelines level. Because the groups comprising counts 2-8 are more than 9 levels less than Count 1, however, no further grouping analysis is necessary.

The combined adjusted offense level assigned to Mr. Gooden is 38[2]. Given Mr. Gooden's prompt acceptance of responsibility, his total offense level is 35. 3E1.1(a) and (b).

Mr. Gooden has 6 criminal convictions and one adjudication, four of which result in criminal history points.

Mr. Gooden's first adjudication was in 1992, where he was adjudicated a Youthful Offender upon conviction for attempted criminal sale of a controlled substance. No criminal history points are assessed for that adjudication pursuant to 4A1.2 (d) and 4A1.2(e)(2), as it occurred more than 10 years prior to the conduct in this case.

---

[2] Mr. Gooden's criminal history would qualify him as a Career Offender under 4B1.1, which sets a minimum guideline level of 37. However, under 4B1.1 (b), because the total offense level is 38, the higher offense level is used.

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 4

On October 22, 1993, Mr. Gooden was convicted of robbery in the second degree in Bronx County Supreme Court, and was sentenced to one and one-half to three years' imprisonment. Under 4A1.1 (a) and 4A1.2 (e)(1), he is assessed 3 criminal history points for that conviction. Also on that date, Mr. Gooden was convicted of robbery in the first degree in Bronx County Supreme Court, and was sentenced to 2 to 6 years' imprisonment. Under 4A1.1 (a) and 4A1.2 (e)(1), he is assessed 3 criminal history points for that conviction as well.

On May 10, 2001, Mr. Gooden was convicted of possession of cocaine in Norfolk, Virginia, and was sentenced to 5 years' imprisonment. Under 4A1.1 (a) and 4A1.2 (e)(1), he is assessed 3 criminal history points for that conviction.

On April 23, 2008, Mr. Gooden was convicted of criminal trespass in the second degree in Bronx County Criminal Court. He was sentenced to a conditional discharge. Pursuant to 4A1.2 (d) (1), no criminal history point are assessed for that conviction.

On January 21, 2009, Mr. Gooden was convicted of aggravated unlicensed operation of a motor vehicle in Bronx County Supreme Court and was sentenced to a conditional discharge and a fine. He was subsequently sentenced to 10 days for failing to pay the fine. Under 4A1.1 (c), 1 criminal history point is assessed for that conviction.

On July 30, 2009, Mr. Gooden was convicted of disorderly conduct in Bronx County Supreme Court and was sentenced to a conditional discharge. Pursuant to 4A.12 (c), no criminal history points are assessed for that violation.

Because Mr. Gooden committed the instant offenses while on parole, another 2 levels are added (4A1.1(d)), bringing his total criminal history score to 12. His nominal criminal history level would be 12, putting him in criminal history category V. Mr. Gooden has 2 prior violent felony convictions and is therefore considered a career offender under 4B1.1 (a). As a result, his criminal history category is VI. With a criminal history category of VI, and a total offense level of 35, Mr. Gooden's advisory guidelines sentencing range is 292-365 months. The convictions under Counts 6 and 7 require additional consecutive sentences of 7 years and 25 years, respectively.

## Probationary Sentences

Mr. Gooden is not eligible for a sentence of probation.

## Supervised Release

Under Count 1, the Court must impose a term of supervised release of at least 10 years. Under Counts 2-5, the Court may impose terms of supervised release of up to 3 years. Under Counts 6 and 7, the Court may impose a term of supervised release of up to 5 years. Under Count 8, the Court may impose a term of supervised release of up to 3 years.

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 5

## The Appropriate Sentence

18 USC § 3553 (a) requires a sentencing court to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." According to § 3553 (a) (1), a sentencing court must consider the nature and circumstances of the offense, and the defendant's history and characteristics. Under subsection (2), the sentencing court must consider the following factors: the seriousness of the offense; the need for deterrence; the need to protect the public; the need to provide the defendant with education or training; the kinds of sentences available; the range of sentences according to the guidelines; any pertinent policy statements; the need to avoid sentencing disparities among similar defendants with similar cases; and, where applicable, the need to provide restitution.

In addition, where, as here, a defendant has rendered substantial assistance to the Government pursuant to a cooperation agreement, the sentencing court must also consider the factors set forth in 5K1.1(a)(1-5). Based on both sets of factors, a sentence of 42 months would be appropriate and fair, and would provide adequate punishment in this case.

In order to properly assess the above factors, a brief personal history for Mr. Gooden is in order. Mr. Gooden ███████████████████████████: he is 39 years old. ███████████████ ████████████████████████████████████████████████████████████████████.

Mr. Gooden has one half sister on his mother's side; ███████████████████████ ████████████. On his father's side, Mr. Gooden has 4 half-siblings, but has no direct contact with them.

Mr. Gooden's parents separated when he was 2; as noted in Mr. Gooden's pre-sentence interview, his father was an "inconsistent presence". He was raised, ███████████████████ ████████████████████ was employed and was able to support the family.

Mr. Gooden attended Evander Childs High School, but did not complete 11th grade due to his arrest and incarceration. Mr. Gooden was trained in welding, plumbing, building maintenance and film development while incarcerated; he also attended an anger management program in prison.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████

## Application of § 3553 Factors to This Case

Mr. Gooden pleaded guilty to narcotics charges, robbery charges, weapons charges, and extortion. The parties agree that Mr. Gooden is responsible for those crimes. Mr. Gooden has accepted full responsibility for his conduct, and has expressed his remorse and sense of guilt for what he has done. Indeed, it was Mr. Gooden who provided the Government with a list of the crimes he committed, all of which were uncharged at that time. As proof of his recognition of

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 6

the wrongful nature of his conduct, Mr. Gooden cooperated with the Government in its investigation into the crimes charged. He candidly and forthrightly provided detailed information to the authorities about his conduct and the crimes of others, allowing the Government to investigate and prosecute a number of violent and dangerous narcotics dealers.

Under 18 USC § 3553 (a)(1), this Court is obligated to consider the nature and circumstances of the offense, and the defendant's history and characteristics. In considering the nature and circumstances of the offenses here, there is little question that they are quite serious. However, not every case deserves a maximum sentence. Here, the appropriate sentence is far below what the advisory guidelines suggest, notwithstanding the serious nature of the crimes. As noted in the Government's submission, nearly all of the offenses to which Mr. Gooden pleaded guilty were based solely on his admissions during meetings with the Government. Indeed, with the exception of the robbery on May 23, 2010 (the crime for which he was initially arrested by Federal agents), the Government had little or no concrete evidence regarding Mr. Gooden's other crimes. Thus, absent Mr. Gooden's own cooperation, and his candid discussions of his past with the Government, these charges would not exist.

As to Mr. Gooden's history and characteristics, the simple fact is that Mr. Gooden grew up in a gang and crime-riddled environment. While his mother was able to support the family, he had no paternal influence in his life, and sadly turned to criminal conduct. In light of Mr. Gooden's innate intelligence, there is little doubt that had he not turned to the streets, he would have been immensely successful at almost any chosen career. As this Court has undoubtedly seen during Mr. Gooden's testimony, he is intelligent, cogent, and speaks well. In fact, it is Mr. Gooden's intelligence and ability to communicate clearly and concisely that made him so effective as a cooperator and witness. He was able to recall details of events, and describe them consistently and clearly, first to investigators and then to jurors. Certainly, Mr. Gooden's intelligence and his potential are factors worthy of consideration by this Court.

The second set of factors, listed in §3553 (a) (2), would also be served by imposition of a sentence below the guidelines. With regard to the seriousness of the offense, promoting respect for the law, and to provide just punishment for the offense, a sentence below the guidelines would clearly satisfy these factors. Although the crimes to which Mr. Gooden pleaded guilty are unquestionably serious, his prompt cooperation, which began immediately upon his arrest in this case, along with his early entry of a guilty plea, show he has recognized the wrongfulness of his conduct and has fully accepted criminal responsibility for what he has done.

Mr. Gooden candidly admitted his participation to many of these offenses even though he was not originally charged with them. He voluntarily provided information to the Government that not only assisted in the apprehension and prosecution of other participants, but also implicated himself in far more crimes than originally charged. Thus, in light of his willing acknowledgment of wrongful conduct, his assistance in prosecuting others, coupled with his willingness to be forthcoming about his own criminal activity, a sentence of time served[3] for the crimes herein would promote respect for the law and provide just punishment.

---

[blacked out]

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 7

The next factor to consider is deterrence.  In reviewing this factor, the Court should keep in mind that it is not Mr. Gooden's sentence alone that can act as a deterrent, but rather it is also the sentences of those who were convicted as a direct result of his cooperation that should be kept in mind.  It is instructive to look not only at how Mr. Gooden's sentence could deter further crimes, but also how the sentences of those whom he helped prosecute could act to deter others.  Here, Mr. Gooden's assistance and testimony helped secure convictions against Calieb Barnes, who was sentenced to a total term of 100 years.  In addition, his anticipated cooperation was likely the determining factor in convincing Mr. Jose Nieves, who was sentenced to 16 years, to plead guilty shortly before trial. ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ Thus, the sentences meted out as a result of Mr. Gooden's cooperation provide significant deterrence to anyone considering a life of violent crime.

Certainly, in light of the lengthy sentences these defendants received, a sentence of time served for Mr. Gooden, whose testimony was a critical factor in their convictions, would also act as a deterrent to anyone considering similar conduct.  To anyone considering criminal activity, knowing that the testimony of a cooperator could result in many, many years in jail would be a powerful deterrent.

The next factor, protecting the public from further crimes by the defendant, would similarly be satisfied by the requested term of imprisonment.  Mr. Gooden has recognized the harm he has done to others, ██████████, and to himself by his actions.  He has an avowed intent to go to school, ████████████████████████████████████████. He now knows that a life on the street is really no life at all, and wants to impart that lesson to his children to steer them down a positive path.  He understands the devastating consequences of the choices he made in the past, and does not want a repeat of them. ████████████████████████ ████████████████████████████████████████ In addition, he has already been incarcerated since early October of 2010.  As such, given the apparent change in Mr. Gooden as a result of his incarceration, a sentence of time served will adequately protect the public.

The final factor under 3553(a)(2) relates to providing Mr. Gooden with rehabilitative services.  Certainly, in light of Mr. Gooden's desire to ████████████████████, and his history of learning skills and tradecraft, the requested sentence will provide him with sufficient time and opportunity to learn the skills necessary to support his family.

In addition to the factors listed in 18 USC § 3553 (a), this Court should also consider Mr. Gooden's cooperation in assessing an appropriate sentence.  Under USSG 5K1.1 (a), the factors to be considered are the significance and usefulness of the defendant's cooperation, taking into account the Government's assessment of the defendant's assistance; the truthfulness, completeness and reliability of the information; the nature and extent of the defendant's cooperation; any injury, danger or risk of injury to the defendant as a result of his cooperation; and the timeliness of the defendant's assistance.

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 8

As the Government has detailed in its submission, Mr. Gooden provided critical and substantial information regarding violent crime in the Bronx and other jurisdictions, enabling the Government to obtain convictions for murder against Calieb Barnes and Jose Nieves. Both Barnes and Nieves were convicted in large part due to Mr. Gooden's truthful and complete testimony. ███████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████ light of the foregoing, it is clear that, as the Government explicitly states, his cooperation "can fairly be characterized as extraordinary." Gov't submission, p. 10.

For example, in considering the significance of Mr. Gooden's information, one example of its import is that Mr. Gooden's cooperation enabled the Government to build a case against LaSimba Samuels. Indeed, the case against Mr. Samuels, who was a narcotics seller primarily to support his own habit, would not have been brought had Mr. Gooden not cooperated.

Mr. Gooden's testimony in the Barnes case, however, shows this Court the true significance of Mr. Gooden's cooperation with the Government. Mr. Barnes was charged with the murder of Raymond McNeil. The evidence available to the police was that witnesses heard gunshots, the sound of an automobile crash, more gunshots, and saw a black BMW with blue headlights fleeing from the murder scene. Mr. McNeil had been shot to death inside his SUV. Ballistics included .45 caliber, .38 caliber, and 9 MM evidence.

As Mr. Gooden described, both to the Government and to the jury, he knew that Barnes was fighting with McNeil over drug locations: in fact, Barnes had asked Mr. Gooden to commit the murder, but in the end, Barnes and Gregory Plaskett performed the shooting. Gooden also described that shortly after the shooting, he saw Barnes with both a .45 caliber handgun and a .357 revolver, both of which are consistent with the ballistics evidence recovered at the scene of the shooting. Mr. Gooden described Barnes' car as a black BMW with blue headlights. A subsequent search of the car confirmed the color of the headlights.

Simply put, absent Mr. Gooden's cooperation, Barnes would not have been prosecuted. While the Government was aware of Barnes' illegal activities, the Government did not have proof before Mr. Gooden cooperated. Thus, as a direct result of Mr. Gooden's cooperation, the Government was able to successfully prosecute Barnes for murder.

In addition, based on Mr. Gooden's extensive knowledge of Barnes' activity, the Government was also able to prosecute Barnes for narcotics and gun sales. Mr. Gooden was intimately familiar with Barnes' narcotics operation, and testified about drug storage and processing locations. Mr. Gooden was able to describe purchasing crack cocaine from Barnes, and saw him selling on a regular basis. Mr. Gooden's information also established Mr. Samuels' participation in the narcotics conspiracy involving Barnes. Mr. Gooden also aided the Government in decoding calls between Barnes and gun purchasers, thus aiding the Government in proving those charges as well.

With regard to the Hobbes Act robbery of "Tone", Mr. Gooden was the only witness who could detail what Barnes did in that crime. He was the only witness at the trial who was present

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 9

for the robbery, and could describe Barnes' conduct. Medical records corroborated Mr. Gooden's testimony of the event.

In light of the foregoing, it is not surprising that the Government categorized Mr. Gooden's testimony against Barnes as "credible, devastating and critical". As the Government stated, Mr. Gooden ensured that Barnes will remain in jail for a very long time. The significance and usefulness of Mr. Gooden's cooperation, as affirmed by the Government, cannot be overstated.

With regard to Mr. Gooden's truthfulness, this Court has first-hand knowledge of whether Mr. Gooden has been truthful in his cooperation. Based on Mr. Gooden's testimony in *United States v. Barnes*, the jury found Mr. Gooden to be a credible witness, and convicted that defendant of murder. Mr. Nieves was similarly persuaded of Mr. Gooden's truthfulness, and pleaded guilty rather than go to trial. Indeed, the prosecutors and agents who met with Mr. Gooden throughout the course of his cooperation were all extremely impressed with his candor. He willingly opened up about events and crimes that they had little or no knowledge of, freely implicating himself in charges that the Government could not otherwise have proved (or even known about). Certainly, one test of truthfulness for a cooperating defendant could be his willingness to implicate himself in matters the Government does not know about: on this test, Mr. Gooden would score an "A+". As the Government noted, much of the crimes to which Mr. Gooden pleaded guilty were unknown to them.

With regard to the nature and extent of Mr. Gooden's cooperation, as noted above, Mr. Gooden provided extremely valuable and detailed information against a number of individuals. Mr. Gooden detailed murders, narcotics and weapons transactions, and was candid about his own role in all the crimes he discussed. As such, his cooperation was complete; he told the Government everything he did, every crime in which he participated, and did not hold back in any way.

The timing of Mr. Gooden's cooperation was similarly in his favor. He was arrested in September of 2010 and began cooperating immediately. Given the speed at which he decided to cooperate, his actions were certainly timely.

Finally, the risk of danger to Mr. Gooden ██████████████████████████. Mr. Gooden is clearly at risk as a result of his cooperation; having testified against a violent and dangerous criminal, he now must live in constant fear that an inmate will seek retribution. █



Based on the foregoing, it is apparent that Mr. Gooden's timely, extensive, detailed and candid cooperation allowed the Government to successfully prosecute a number of individuals. If not for Mr. Gooden's substantial efforts, the Government might not have secured convictions from Mssrs. Barnes and Nieves, ████████████████████████
████████

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 10

Indeed, Mr. Gooden's conduct in the Barnes prosecution is perhaps the best example of his efforts for the Government.  He met numerous times with prosecutors to discuss the details of his testimony, and then testified with such detail and credibility that the jury was convinced of Mr. Barne's guilt beyond a reasonable doubt.

It is that conduct §5K1.1 is intended to promote.  Mr. Gooden made the ultimate act of recognition of his wrongful conduct; he pleaded guilty, accepting full responsibility for his actions, and then candidly and forthrightly aided the Government in prosecuting others.  His action in doing so, notwithstanding the substantial risk he faced as a result, shows his complete acceptance of responsibility for his conduct.

In considering the appropriate sentence in this case, this Court should review the sentence imposed on Mr. James Hardy, a/k/a "J-Rock".  Mr. Hardy was arrested and charged along with Mr. Gooden in the original complaint in this matter.  Mr. Hardy pleaded guilty to Hobbes Act robbery, and was sentenced by Judge Rakoff to 156 months, or 13 years.  As part of that negotiated plea, the 924 (c) count in the indictment was dismissed.  Mr. Hardy did not cooperate.

In fashioning Mr. Gooden's sentence, Mr. Hardy's provides a jumping-off point for this Court's analysis.  Had Mr. Gooden simply pleaded to the charge against him, without cooperating with the Government, his sentence would likely have been similar to Mr. Hardy's sentence.  Charged with a single Hobbes Act robbery, Mr. Gooden's presumptive guidelines calculation would be as follows: the base offense level would be 20 (2B3.1).  Adding in the appropriate enhancements for bodily injury and narcotics (2B3.1 (b) (3)(B) and (b) (6)), the adjusted offense level would have been 25.

However, because Mr. Gooden is a career offender as defined in 4B1.1, his offense level for the Hobbes Act robbery would be level 32.  *See* 4B1.1(b)(3).  As part of a plea, Mr. Gooden would have accepted responsibility in a timely manner, and thus would be entitled to a 3-point reduction, bringing his total offense level to 29.  Although Mr. Gooden has a total of 12 criminal history points, which would put him in Criminal History Category V, as a career offender he is put into category VI. 4B1.1 (b).  Under the advisory guidelines, his sentence range would have been 151-188 months.  As noted above, Mr. James Hardy was sentenced to 156 months; his guidelines range was 135-168 months.

In light of this analysis, Mr. Gooden's likely sentence would have been in the 12-15 year range for the sole crime for which he was arrested.  As noted above, and as explicitly stated by the Government, the investigators knew little or nothing about Mr. Gooden's other crimes that they could prove in court.  Thus, the only likely charge they could have brought against Mr. Gooden was the May 23, 2010 robbery.

With this in mind, it is respectfully submitted that the proper starting point for Mr. Gooden's sentence is not the 292-365 month range based on the guidelines, nor is it the statutory mandatory minimum of 52 years.  Instead, giving proper credit for Mr. Gooden's extraordinary cooperation, and the limited information the Government had before Mr. Gooden cooperated against both himself and others, the appropriate starting point is the 13-year sentence given to Mr. Hardy.  It is only slightly less than the probable sentence Mr. Gooden would have received

Hon. Denise L. Cote, United States District Judge
May 16, 2014
Page 11

had he simply pleaded guilty to the charge against him.  Thus, considering only that single robbery is the appropriate start for the sentence calculation.

In considering Mr. Gooden's cooperation, then, this Court should start at 13 years. Giving Mr. Gooden due credit for his cooperation, which was overwhelmingly significant and useful, was incriminating and candid, was complete, reliable and extensive, and which entailed massive risk of physical harm for years to come, a sentence of time served, in light of what Mr. Hardy received, is reasonable.  Thus, a sentence of time served would be the appropriate sentence in this case.

Mr. Gooden has made a truly herculean effort in cooperating with the Government, and now asks only that this Court sentence him fairly, given both his crimes and the extraordinary assistance he provided.  He has seen the harm his conduct has caused, and has done his best to cooperate with the Government, admitting to conduct about which the Government did not know, and providing tremendously valuable help on many crimes, all as part of his own process to pay his debt to society.  Here, he asks this Court for a reasonable sentence.  Accordingly, We ask only that this Court sentence Mr. Gooden to time served, thus providing him with one more chance to be relevant to █████████████████, and to society.

Under the circumstances of this case, given Mr. Gooden's remarkably candid, far-reaching and detailed cooperation, his full acceptance of responsibility, and his successful efforts at rehabilitation, the requested sentence would be sufficient, but no more than necessary, to promote the ends of justice.

Very truly yours,

-S-

David K. Bertan


cc:      AUSA Laurie Korenbaum (via email)